UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHEN C. SCHOTT, as TRUSTEE FOR THE STEPHEN C. SCHOTT 1984 TRUST,<br><br>Plaintiff,<br><br>v.<br><br>IVY ASSET MANAGEMENT CORP.; THE BANK OF NEW YORK MELLON CORP.; and DOES 1 through 10,<br><br>Defendants. | Case No.: 10-CV-01562-LHK<br><br>ORDER GRANTING MOTION TO CHANGE VENUE |

Defendants Ivy Asset Management Corp. ("Ivy") and The Bank of New York Mellon Corp. ("BNY Mellon"), which acquired Ivy in 2000, moved to change venue from the Northern District of California to the Southern District of New York. Dkt. No. 10 ("Mot. to Transfer"). Plaintiff Stephen Schott opposes the motion. Dkt. No. 29 ("P.'s Opp'n"). Having considered the parties' submissions, oral arguments, and the relevant legal authorities, Defendants' motion for change of venue is GRANTED, and this case is TRANSFERRED to the Southern District of New York for further adjudication.

**I. BACKGROUND**

A. Plaintiff's Causes of Action

Plaintiff Stephen Schott's suit concerns money that Plaintiff invested in an entity that in turn placed the money with Bernard Madoff and his investment firms. Because Madoff was

1

1  perpetrating a giant Ponzi scheme, Plaintiff lost his investment.  Plaintiff claims that he made the
2  investment because of false representations made to him by his investment advisor, Ivy.  On April
3  12, 2010, Plaintiff filed his complaint against Defendants in the Northern District of California.  In
4  it, Plaintiff alleged the following.

5  Plaintiff began investing through Ivy in 1994.  Dkt. No. 1 ("Schott Compl."), at ¶ 21.  In
6  1996, Plaintiff met with Ivy's president, Lawrence Simon, in Plaintiff's office in Santa Clara,
7  California.  *Id.*  At that time, Lawrence Simon suggested to Plaintiff that he change his investment
8  strategy by investing with other investment managers.  *Id.*  According to Plaintiff, Ivy represented
9  that it would monitor these outside investment managers.  *Id.*  This representation induced Plaintiff
10 to enter into a written agreement with Ivy on December 9, 1996 in Santa Clara, California.  *See id.*
11 ¶¶ 21-22.  The agreement provided in part that Ivy would recommend investment managers to
12 Plaintiff from among the managers it monitored and would "monitor the performance and activities
13 of the selected investment managers."  *Id.*

14 Ivy subsequently introduced Plaintiff to Beacon Associates LLC 1 ("Beacon Fund").  *Id.* ¶
15 23.  Managed primarily by Beacon Associates Management Corp. ("Beacon Fund Manager"), the
16 Beacon Fund offered Plaintiff an opportunity to invest in the company through a private placement
17 memorandum.  *Id* ¶¶ 6, 23-24.  The memorandum identified Ivy as an investment consultant to the
18 Beacon Fund Manager and made various representations regarding the Beacon Fund's investment
19 strategies.  *Id.* ¶¶ 24-25.  Following these representations, Plaintiff transferred $2,000,000 to the
20 Beacon Fund Manager.  *See id.* ¶ 9.  The Beacon Fund Manager then invested the money with
21 Madoff and his controlled entities.  *Id.*

22 Federal authorities arrested Madoff on December 11, 2008 for operating a Ponzi scheme.
23 *Id.* ¶ 10.  Though Madoff had claimed to have been making excellent returns on investments made
24 with him, he in fact was using investments from new clients to pay "returns" to other clients.  *Id.*
25 Because Madoff did not generate any real returns on investments made with him, the money from
26 the Beacon Fund invested with Madoff, including Plaintiff's, was lost.  *Id.* ¶¶ 10, 12, 31.

27 Plaintiff claims that Ivy falsely represented to him--in its contract with him, in
28 conversations with him, and in the private placement memorandum through which he invested in

the Beacon Fund--that it would properly monitor the Beacon Fund Manager while it managed his investment. *See id.* ¶¶ 5, 21, 29, 47. According to him, Ivy also ignored many "red flags" that should have alerted it to the fraudulent nature of Madoff's scheme. *Id.* ¶ 11. Had Ivy diligently performed its duty to monitor the Beacon Fund Manager, it would have altered Plaintiff's investment strategy and saved his investment. *Id.* ¶ 12. On the basis of these allegations, Plaintiff is suing Ivy for breach of its 1996 contract with him, intentional misrepresentation, negligent misrepresentation, breach of fiduciary duty, negligence, and aiding and abetting breaches of fiduciary duty. Plaintiff's sole cause of action against BNY Mellon is for aiding and abetting breaches of fiduciary duty.

### B. *In re Beacon Assocs. Litig.*

Plaintiff was not the only individual harmed by Madoff's actions. Nor is Plaintiff the only individual seeking legal redress for his injury. Judge Sand of the U.S. District Court for the Southern District of New York ordered several actions involving investments in the Beacon Fund, and its companion fund, consolidated into a single class action: *In re Beacon Assocs. Litig.*, No. 09-CV-0777 (S.D.N.Y. Oct. 1, 2009) ("*In re Beacon*"). *See* Mugmon Decl., Ex. B, at 2. This putative class action has many parallels to Plaintiff's present action against Ivy.

The class in *In re Beacon* consists of all investors in the Beacon Fund who had not redeemed their interests in the Fund as of December 11, 2008 and those who invested in the Beacon Fund through an employee benefit plan covered by ERISA. Decl. Mugmon, Ex. A, Part 1, at 37. The Beacon Plaintiffs allege that the Beacon Fund Manager and Ivy, along with individuals associated with each entity, failed to properly monitor the Beacon Fund's investments in Madoff and his entities. *Id.* at 3-8. They also allege that the Beacon Fund Manager and Ivy issued false and misleading statements regarding the due diligence that they did and would perform on the Beacon Fund's investments with Madoff. *Id.* Like Schott, the Beacon Plaintiffs claim that Ivy, the Beacon Fund Manager, and BNY Mellon ignored a number of red flags that would have alerted them to the true nature of Madoff's scheme. *Id.* at 66-70. As a result of these actions, investors in the Beacon Fund lost their money. *Id.* at 4.

Case No.: 10-CV-01562-LHK
ORDER GRANTING MOTION TO CHANGE VENUE

The Beacon Plaintiffs filed suit against five entities and twenty-seven individuals. *Id.* ¶¶ 65-105. The entities named in the complaint included: Ivy, the Beacon Fund Manager, BNY Mellon, J.P. Jeanneret Associates, Inc.,[1] and an independent auditor of the Beacon Fund. *Id.* In total, the Beacon Plaintiffs made twenty-five claims against the defendants named in its complaint. Decl. Mugmon, Ex. A, Part 2, at 116-54. Among these were claims for violation of sections 10(b) and 20(a) of the Exchange Act, breach of fiduciary duty, fraud, breach of contract, negligent and gross misrepresentation, unjust enrichment, and aiding and abetting breach of fiduciary duty. *Id.*

On October 5, 2010, the court in the Southern District of New York ruled on Defendants' motion to dismiss the class's complaint. *In re Beacon Assocs. Litig.*, 2010 WL 3895582 (S.D.N.Y. Oct. 5, 2010). Although some federal and ERISA claims survived, all of plaintiffs' direct state law claims were dismissed. *Id.* Specifically, the court held that all of the *In re Beacon* plaintiffs' common law causes of action were preempted by the Securities Litigation Uniform Standards Act, New York's Martin Act or both. *Id.* at *33-39.

C. Defendants' Motion to Transfer Venue

On June 11, 2010, Defendants in the instant Northern District of California case moved the Court to transfer venue in this case to the Southern District of New York. Dkt. No. 10 ("Defs.' Mot."). They argue transfer is proper because the *In re Beacon* litigation is pending there and because most of the documents, potential witnesses, and parties to the case reside there. Plaintiff opposes the motion on the grounds that the Court should respect his choice of venue and that transfer will greatly inconvenience him if his case is consolidated with *In re Beacon*.

## II.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold issue is whether the action could have originally been brought in the forum to which the moving party seeks to transfer. *See Hoffman v. Blaski,* 363 U.S. 335, 344 (1960); *Shalaby v. Newell Rubbermaid, Inc.*, 2007 WL 3144357, *3 (N.D. Cal. Oct. 24, 2007).

---

[1] This was an entity that acted as an investment manager to ERISA-covered employee benefit plans that invested in the Beacon Fund.

4

Case No.: 10-CV-01562-LHK
ORDER GRANTING MOTION TO CHANGE VENUE

Once the party seeking transfer has made this showing, district courts have discretion to consider motions to change venue on a case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In determining whether to grant the motion, the district court must weigh a number of different "case-specific factors." *Id.* These should include both public and private factors. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 (1981); *see Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). These factors might include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (footnotes omitted).

Private factors generally concern the relative impact of the venue on the private parties participating in the litigation, their access to evidence, the availability of compulsory process, "and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947). Public factors concern relative institutional advantages, burdens on the public, and the general interest in having disputes adjudicated where there is genuine interest in the controversy. *See Piper Aircraft,* 454 U.S. at 241 n.6.

Consideration of these factors is meant to fulfill the purposes of § 1404(a). In particular, the section is meant "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense," *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)) (internal quotations omitted). Although there is no clear calculus for weighing the various factors, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843 (citing *Mizokami Bros. of Arizona v. Mobay Chem. Corp.,* 660 F.2d 712, 718 (8th Cir. 1981)).

5

### III. ANALYSIS

A. Plaintiff's Choice of Forum

Plaintiff's central opposition to transfer is that this Court should respect his choice of venue. P.'s Opp'n 2, 4. "The general rule is that a plaintiff's choice of forum is afforded substantial weight." *Williams v. Bowman*, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001) (citing *Decker*, 805 F.2d at 843). However, "[i]n judging the weight to be accorded [plaintiff's] choice of forum, consideration must be given to the extent of both [plaintiff and defendants'] contacts with the forum, including those relating to [plaintiff's] cause of action." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (citing *Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968)).

Plaintiff's connections to the Northern District of California are significant. Plaintiff, seventy-one years of age as of September 1, 2010, has lived and worked his entire life in California. Dkt. No. 30 ("Schott Decl."), at ¶ 2. His office is currently located in Santa Clara, California, and his home is in Los Altos Hills, California. *Id.* Moreover, many of the alleged interactions between Plaintiff and Defendants occurred in Plaintiff's chosen venue. Plaintiff and Lawrence Simon, the president of Ivy, met at Plaintiff's Santa Clara office to discuss employing Ivy for certain investment services. Schott Decl. ¶ 3. As a result of this meeting, and other communications, Plaintiff entered into a written agreement with Ivy in California. Schott Compl. ¶ 22. It is this agreement which forms the basis for Plaintiff's breach of contract claim. *Id.* ¶ 44-47. After signing the agreement, Plaintiff alleges that representatives of Ivy continued to meet with him in California to discuss his investments. Schott Decl. ¶ 5. Plaintiff also states that Ivy attended to his investment needs out of an office in San Francisco. *Id.* ¶ 6. In summary, Plaintiff claims that "[a]ll [his] dealings with Ivy took place in California and all the representations that Ivy made to [him] occurred in California." *Id.* ¶ 8.

These facts support affording Plaintiff's choice of forum substantial weight.

B.  Presence of Related Litigation in the Transfer Forum

The question becomes whether Defendants can show that other factors outweigh the Plaintiff's choice.[2] Defendants' main argument in favor of transfer is the presence of a putative class action in the Southern District of New York that is related to Plaintiff's suit against the Defendants. Mot. to Transfer 2-4, 6-7. The presence of related litigation in another venue weighs heavily in favor of transfer. *See e.g.*, *Lee v. Lockheed Martin Corp.*, No. 03-CV-1533, 2003 WL 22159053, at *2-3 (N.D. Cal. Sept. 16, 2003) (ordering transfer based partially on the presence of a nearly identical suit in the Eastern District of North Carolina); *Broadcom Corp. v. Agere Sys., Inc.*, No. 03-CV-02197, 2003 WL 21982473, at *1 (N.D. Cal. Aug. 8, 2003) (ordering transfer of a licensing dispute case to another district where the technology was already at issue in another case); *Baird v. Cal. Faculty Ass'n.*, No. 00-CV-0628, 2000 WL 516378, at *1 (N.D. Cal. Apr. 24, 2000) (granting transfer and holding that related litigation pending in another forum weighs heavily in favor of transfer).

The arguments in favor of considering, and weighing heavily, the existence of related litigation are persuasive. For example, "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (quoting *Continental Grain*, 364 U.S. at 26) (internal quotations omitted); *see A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974) (The presence of "an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties."); *River Road Int'l., L.P. v. Josephthal Lyon & Ross Inc.*, 871 F. Supp. 210, 214 (S.D.N.Y. 1995) ("[L]itigation of related claims in the same tribunal results in more efficient conduct of pretrial discovery, saves witnesses time and money in both trial and pretrial

---

[2] As to the threshold issue of showing that venue in the transfer forum is proper, Defendants argue that venue in the Southern District of New York is proper under 28 U.S.C. § 1391(a)(1) because all Defendants reside in the same state. Section 1391(a)(1) provides that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State . . . ." Plaintiff does not dispute this.

7

Case No.: 10-CV-01562-LHK
ORDER GRANTING MOTION TO CHANGE VENUE

1   proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating
2   unnecessary expense to the parties while at the same time serving the public interest.") (quoting
3   *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turtur,* 743 F.Supp. 260, 263 (S.D.N.Y. 1990)
4   (internal quotation marks omitted)).

5   As a factual matter, Defendants claim that the case pending in New York, *In re Beacon Assocs. Litig.*, No. 09-CV-0777 (S.D.N.Y.) ("*In re Beacon*"), involves many of the same claims, seeks the same relief, and charges the same defendants using the same general nucleus of factual allegations. Mot. to Transfer 7. On a whole, this characterization is accurate. The facts alleged in both complaints overlap. Plaintiffs in both cases assert that the Beacon Fund's investment materials misled investors with false statements. Both claim that Ivy failed to perform due diligence on the funds that it recommended to its investors. Both also claim that Ivy ignored or failed to investigate numerous "red flags" that should have led to the discovery of Madoff's Ponzi scheme. Finally, both claim that these actions led to the dramatic reduction in the value of the assets that they had invested in the Beacon Fund.

In addition, all of the Defendants named in Plaintiff's complaint are also named in the *In re Beacon* complaint, and Plaintiff fits into the putative class identified in that complaint. Plaintiff also seeks the same type of relief--recovery of money lost through investment in the Beacon Fund-- as the plaintiffs in *In re Beacon*. Though Defendants also claimed that five of the six counts enumerated in Plaintiff's complaint have near direct corollaries in the *In re Beacon* litigation, Defendants' counsel admitted at the hearing that Judge Sand's decision to dismiss the common law claims in *In re Beacon* negates this overlap. In other words, the one Plaintiff's claim that would survive Judge Sand's ruling (breach of contract) does not have an identical counterpart in the *In re Beacon* litigation.

Plaintiff contests the Defendants' factual assertion that the two cases are sufficiently similar to warrant transfer. P.'s Opp'n 2-3. He argues that because the two cases are quite different in their size, complexity, and scope, the *In re Beacon* class action will take longer to progress through discovery and pre-trial motions than his more focused case. *Id.* As a result, Plaintiff contends that the existence of the *In re Beacon* litigation should not weigh in favor of transfer.

8

Case No.: 10-CV-01562-LHK
ORDER GRANTING MOTION TO CHANGE VENUE

Plaintiff's concerns are legitimate. Transfer will significantly impact Plaintiff's case. Even if Plaintiff opts out of the *In re Beacon* putative class, discovery, motions, and trial in his case may likely be dominated and controlled by the *In re Beacon* litigation. Moreover, the resolution of his claim would likely be greatly delayed. Class actions present time-intensive and costly legal issues, such as class certification, that individual actions do not. In addition, the presence of more plaintiffs and defendants will necessitate more discovery and a longer trial. Plaintiff is also correct in pointing out that the plaintiffs in *In re Beacon* are pursuing claims that are not at issue in his case. Should Plaintiff's action be related to or consolidated with the *In re Beacon* case,[3] these additional claims, due in part to the presence of ERISA plaintiffs and an outside auditor defendant in the *In re Beacon* matter, may further delay the resolution of Plaintiff's case. In addition to delay, transfer will make litigation more expensive for Plaintiff unless the class is certified, and Plaintiff remains in the class.

Despite the great inconvenience that Plaintiff will endure if this case is transferred, transferring this case to the Southern District of New York will allow for significant coordination of discovery and other litigation activity. This will reduce costs, in time and money, for the parties, witnesses, and the court. Moreover, Judge Sand has already ruled on defendants' motion to dismiss the putative class's complaint, *In re Beacon Assocs. Litig.*, 2010 WL 3895582 (S.D.N.Y. Oct. 5, 2010). On the one hand, this ruling diminishes the legal overlap between Plaintiff's case and *In re Beacon*. On the other hand, any further adjudication of Plaintiff's case in this forum could lead to identical litigation over matters already decided, which in turn could lead to inconsistent rulings. The fact that relation or consolidation of Plaintiff's case with *In re Beacon* is likely and that Plaintiff may opt to remain in the putative class underscores the need for transfer.

While it is unfortunate that greater overall efficiency and consistency are sometimes achieved at the cost of some individual inconvenience, the policy goals of § 1404(a) force this Court to consider the broader implications of its decision. If all parties impacted by the alleged actions of Defendants were granted the right to a separate resolution of their dispute, tremendous inefficiencies, and possible inconsistencies, would result. The fact remains that Plaintiff is a

---

[3] This Court is not expressing an opinion on whether this should or should not occur.

9

Case No.: 10-CV-01562-LHK
ORDER GRANTING MOTION TO CHANGE VENUE

1     member of the putative class in *In re Beacon*. Though the added scope of the *In re Beacon*

2     litigation does present the threat of real inconvenience to Plaintiff, the added efficiency of

3     adjudicating related litigation in the same venue and the increased likelihood of avoiding

4     inconsistent rulings weigh in favor of transfer.

5       C.  Convenience to the Parties and Witnesses

6       Defendants also argue that the convenience of the parties and witnesses weighs in favor of

7     transfer. Mot. to Transfer 8-9. In support of this position, Defendants point out that both Ivy and

8     BNY Mellon have their principal places of business in New York. *Id.* at 8. Lawrence Simon, one

9     of Plaintiff's contacts at Ivy during the relevant period, is also a resident of New York state. *Id.*

10    Another involved entity, Beacon Associates Management Corp. (or the Beacon Fund Manager), is

11    headquartered in New York and its principals are New York residents. *Id.* According to

12    Defendants, it would be more convenient for each of these entities and individuals to litigate in

13    New York. *Id.* Although Defendants dispute whether Plaintiff, who has lived and worked in

14    California his entire life, would be inconvenienced by litigating in New York, they claim that this

15    potential inconvenience is diminished given their willingness to take the Plaintiff's deposition in

16    California. Dkt. No. 37 ("Defs.' Reply"), at 6.

17      Plaintiff argues that all of the parties have a connection with California. P.'s Opp'n 5. He

18    contends that Ivy previously had an office in San Francisco and that officers of Ivy travelled to

19    California in the past to do business. Schott Decl. ¶ 6; P.'s Opp'n 5. In addition, Plaintiff argues

20    that the party convenience factor does not weigh in Defendants' favor because they have failed to

21    name particular witnesses who will be inconvenienced. P.'s Opp'n 5. Plaintiff argues that "[t]o

22    demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state

23    their location and describe their testimony and its relevance," *Williams v. Bowman*, 157 F.Supp.2d

24    1103, 1108 (N.D. Cal. 2001), and that Defendants have failed to fulfill this requirement. *Id.* Even

25    though Plaintiff is correct to point out that Defendants did not produce a clear list of relevant

26    witnesses with a description of their relevant testimony, it appears more of the parties in this case

27    reside in New York.

28

The Court is concerned, however, with Defendants' claim that this forum is inconvenient when Defendants and their representatives were very willing to frequent this forum to solicit investments. As Plaintiff pointed out, representatives of Ivy, including its president, repeatedly met with Plaintiff in California. In addition, Ivy opened an office in San Francisco during the time it had Plaintiff as a client. These facts clearly show that travel to California is not too inconvenient for Defendants. Moreover, Plaintiff is a single individual while Defendants are financial institutions that have allegedly profited from investors in California. That being said, Defendants have also presented evidence that travel to New York is not too inconvenient for Plaintiff. According to Defendants, Plaintiff first met with Lawrence Simon in New York and may have travelled there several times a year. Simon Decl. ¶¶ 3-4.

Any attempt, however, to calculate which side would be more inconvenienced would be speculative in nature. The reality appears to be that both sides are capable of cross-country travel. Based on the information before it, the Court finds that this factor is neutral with respect to transfer.

D.  Convenience to the Non-party Witnesses and Availability of Compulsory Process

Defendants claim several possible non-party witnesses who reside in New York will not be available for compulsory process if the trial is held in the Northern District of California. Mot. to Transfer 9. These include former Ivy employees and the principals of the Beacon Fund Manager, specifically Joel Danziger and Harris Markhoff. *Id.* On the other hand, Plaintiff has identified one potential non-party witness, Daniel Ikeda, who resides in California. Pl.'s Opp'n 6. Plaintiff maintains that Ikeda was present at a meeting where Lawrence Simon made certain representations to Plaintiff regarding the way in which Ivy would monitor the management of Plaintiff's investments. *Id.*

Defendants argued at the hearing on this matter that Ikeda will not have any relevant testimony. In their view, all that Ikeda could do is confirm that Plaintiff and Ivy entered into a contract. They argue that because this fact is not in dispute, his testimony will not be relevant. The last line of Plaintiff's contract with Defendants supports this assertion: "No covenant, representation or condition not expressed in this Agreement shall affect the express provisions of

11
Case No.: 10-CV-01562-LHK
ORDER GRANTING MOTION TO CHANGE VENUE

1   this Agreement." Schott Compl., Ex. 1, at 4. Moreover, Defendants represent that even if Ikeda

2   does possess relevant testimony, they are willing to take his deposition in California. Defs.' Reply

3   8. Although it is too early to determine whether Ikeda will prove to possess important testimony,

4   the number of potential non-party witnesses residing in New York is greater than the single

5   individual residing in California. As a result, this factor weighs in favor of transfer.

6        E. Access to Sources of Proof

7        Because of the presence of Defendants and relevant third-parties in New York, Defendants

8   assert that virtually all of the potentially relevant documents are in New York. Mot. to Transfer 9;

9   Defs.' Reply 7-8. Plaintiff does not appear to dispute this claim. Instead, he argues that the

10  realities of modern transportation and communication negate any advantages in transferring the

11  case to New York. P.'s Opp'n 6-7. In support of his claim, he cites a decision by the Second

12  Circuit. In *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963 (2nd Cir. 1980), the

13  plaintiff appealed the district court's decision to dismiss his case based on *forum non conveniens*.

14  Although the Second Circuit did remand the case, it did so only because the district court's

15  dismissal was not conditional upon the willingness of another court to hear the case. In fact, in

16  reviewing the district court's analysis, the court specifically noted that the district court had

17  observed that most of the documents relevant to the case were located outside of the plaintiff's

18  chosen forum and had used that observation as support for dismissing the case. *See id.* at 967.

19  Even though a concurring opinion did find that advances in modern technology should alter the

20  analysis, *see id.* at 969 (concurring opinion), the majority failed to adopt this view.

21       In contrast, Defendant cites a recent decision by a court in the Northern District of

22  California stating that "while developments in electronic conveyance have reduced the cost of

23  document transfer somewhat, the cost of litigation will be substantially lessened if the action is

24  venued in the same district where most of the documentary evidence is found." *Milton v.

25  TruePosition, Inc.*, No. 08-CV-3616, 2009 WL 323036, at *4 (N.D. Cal. Feb. 9, 2009) (quoting

26  *Foster v. Nationwide Mut. Ins. Co.*, No. 07-CV-4928, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14,

27  2007)). Even though Plaintiff may have entered into his agreement with Ivy in California, the facts

28

show that the majority of documentary evidence is in New York.  Therefore, this factor weighs in favor of transfer.

### F.  Familiarity with Governing State Law

Plaintiff's contract claim against Ivy is governed by New York State Law.  Plaintiff's contract explicitly states that "[t]he validity, interpretation and construction of this Agreement shall be determined and governed by the laws of the State of New York."  Schott Compl., Ex. 1, at 4; *see* P.'s Opp'n 8.  Defendants also claim that they will raise defenses under New York statutory law.  Mot. to Transfer 9.  Plaintiff represents that his other claims, however, are governed by California federal law.  P.'s Opp'n 8.  Plaintiff also seeks punitive damages under California Civil Code § 3294.  Schott Compl. ¶ 50.

In light of Judge Sand's ruling in the *In re Beacon* defendants' motion to dismiss, it is clear that matters of New York statutory interpretation will play an important role.  *See In re Beacon Assocs. Litig.*, 2010 WL 3895582 (S.D.N.Y. Oct. 5, 2010).  In fact, the Martin Act, a New York state statute, proved dispositive of many of the *In re Beacon* plaintiffs' claims, including five that allegedly overlap with Plaintiff Schott's claims in this case.  Furthermore, Judge Sand dismissed the *In re Beacon* plaintiffs' common law contract claims.  *Id.* at *33-39.  Thus, it is possible that New York law will prove dispositive of Plaintiff's entire case.  Even if there are some issues of California law, New York law governs Plaintiff's contract and possibly governs whether all his claims are preempted.  As a result, this factor weighs in favor of transfer.

### E.  Costs of Litigation

Plaintiff claims that there will be a large disparity in cost between litigating in New York as part of a class action and litigating in California.  P.'s Opp'n 9.  Transfer to a distant forum would likely increase the costs to Plaintiff unless the *In re Beacon* class is certified, and Plaintiff remains in the class.  He may have to travel for trial, and if he opts out of any certified class, he will likely need to locate and retain local counsel in New York.  Moreover, unlike Defendants, Plaintiff cannot diffuse the costs.  Given the Court's inability to estimate the financial burdens on either side at this time, this factor is too speculative and thus neutral with respect to transfer.

F. Local Interest

Plaintiff argues that California has a strong interest in protecting its citizens from harms that originated here. P.'s Opp'n 10. Defendants' response is that the allegedly wrongful activity actually occurred in New York and that the interest in Madoff's ponzi scheme is greater there. Defs.' Reply 9. Even accepting Defendants' argument, the fact remains that they entered into a contract with a California citizen in California. Any alleged harm occurred in California where Plaintiff resides. This Court has an interest in protecting its citizens from harm. This interest is independent of how much interest other forums have in vindicating allegedly similar wrongdoings by the Defendants. This factor weighs against transfer.

G. Other Factors

Plaintiff has raised other factors in his brief. The Court, however, will not consider them individually because it does not find any of them significant enough to outweigh the factors already discussed.

IV. CONCLUSION

Plaintiff's choice of forum and local interest in his dispute weigh in favor of denying transfer. The existence of a related action in the transfer forum, familiarity with governing state law, access to sources of proof, convenience to non-party witnesses, and the availability of compulsory process all weigh in favor of transfer. The Court considers the other factors to be neutral with respect to transfer. Even though the Court recognizes the inconvenience that transfer will impose on Plaintiff and views skeptically Defendants' claim that coming to California is inconvenient now that the opportunity to solicit investments from Plaintiff has passed, the Court finds that the possibility of inconsistent rulings and the inefficiency of duplicative litigation outweigh these concerns. This Court certainly has an interest in determining whether a wrong has been perpetrated on an individual residing within its district, but is compelled by broader concerns to entrust a fellow court with this task. This Court, therefore, GRANTS Plaintiff's motion to

//

//

change venue and TRANSFERS this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

**IT IS SO ORDERED.**

Dated: October 19, 2010

_____
LUCY H. KOH
United States District Judge